## [No. 3661.]

### CHARLES GOLDEN *v.* THE STATE.

1. ROBBERY — PRINCIPAL OFFENDER — EVIDENCE.— See the opinion *in extenso*, and the statement of the case, for evidence *held* insufficient to support a conviction under an indictment which charged the accused as a principal to robbery.

2. SAME.— INDICTMENT which charges an accused as a principal offender will not warrant a conviction upon proof that he was an accessory. See the opinion *in extenso* for evidence *held*, under this rule, to have been erroneously admitted.

APPEAL from the District Court of Tom Green. Tried below before the Hon. William Kennedy.

The conviction in this case, for which the appellant was awarded a term of five years in the penitentiary, was for the robbery of John Rowe, in Tom Green county, Texas, on the 23d day of June, 1884.

John Rowe was the first witness for the State. He testified that he lived in Tom Green county, Texas. He came to the town of San Angelo on the evening of June 23, 1884, with Mr. Charles Barron, for whom he had been working. Reaching town, the witness and Barron went to the livery stable, where they had a settlement, Barron paying witness $65 in five and ten dollar bills, and three dollars and some cents in silver. Witness then walked up the street some distance, stopping in the several saloons and taking three or four drinks. Witness finally walked up the street towards the restaurant to get his supper, and stopped in at the saloon adjoining the Olympic Theatre to get a final drink before supper. The defendant and Cornelius Williams were standing at the bar. Witness invited them to drink, which they did. Witness then took out his roll of money and tendered the bar keeper a ten-dollar bill in payment. The bar keeper said that he did not have the necessary change, and

told witness to pay him next day. Witness then put his roll of money in his right hand pants pocket, and the ten-dollar bill in his vest pocket. Witness then left the saloon to get his supper, leaving the defendant and Williams still standing at the bar. Witness had taken but a few steps from the saloon door when some one from behind caught him around the waist, pinioning his arms in the embrace. Witness called for help, and, seeing the defendant at a short distance, appealed to him, but defendant replied: "It is none of my funeral," or words to such effect. About this time Williams, the man who had caught the witness, turned him loose and ran through the restaurant. Defendant went in another direction. Witness followed Williams through the restaurant, caught him by the back, and told him to return the money. Williams turned, slapped witness down, and went on. While Williams was holding him, the witness felt the insertion of a hand in his right hand pants pocket, where he had his roll of money. As soon as he was released witness felt in his pocket and found his money gone. The money amounted to $55, in five ten and one five dollar bills. This money was taken from the witness without his consent in the town of San Angelo, Tom Green county, Texas. Witness could see the defendant where he stood, quite plainly, by means of the light which hung at the entrance of the saloon.

Cross-examined, the witness stated that he took three drinks on his way up the street, and three drinks in the Olympic saloon. Witness did not think Golden, the defendant, was the man who took his money. Golden stood within three or four steps of the witness while he was being robbed.

John Wharton was the second witness for the State. He testified that he knew the defendant. Witness saw defendant on the morning of June 24, 1884, near his house in San Angelo, Tom Green county, going towards another house with a hatchet in his hand. Defendant opened the door of that house with his hatchet, and Williams emerged. Defendant then said to witness: "For God's sake, don't say anything about this, for Williams might go to the penitentiary." This occurred on the next day after the robbery, and before any arrests were made for the robbery of John Rowe. Williams afterwards came to witness's house and asked permission to stay there. He also requested witness to see some of his friends for him. Witness went immediately to an officer and caused the arrest of Williams.

The motion for new trial raised the question discussed in the opinion.

*A. P. McCarty*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Appellant was indicted for the robbery of one John Rowe. He was indicted as a principal offender. He did not perpetrate the deed himself, but it was perpetrated in fact by one Williams. In brief, the evidence as far as it implicates defendant is that Williams and defendant were together in the saloon and drank with the assaulted party, saw his money when he pulled it out to pay for the drinks, and put it back in his vest pocket. After Rowe left the saloon and had gone but a few steps outside, Williams seized him from behind and robbed him. Whilst Williams was robbing him Rowe called to Golden, who was not far off, to help him, and Golden, the defendant, replied " it was none of his funeral," or something to that effect. This was all that was said or done by defendant.

Does this evidence show that the parties were acting together? or that defendant, being present and knowing the unlawful intent of Williams, aided him by acts or encouraged him by words or gestures whilst engaged in the commission of the unlawful act? (Penal Code, arts. 74, 75.) We can scarcely think so. From the time these parties had first met and taken the drink together, Williams and defendant would hardly have had time to form a conspiracy to rob Rowe. Golden's remark when called upon for help may appear, and doubtless was, most heartless,— " it is none of my funeral," — but it rather indicates that he wished to have nothing to do with the matter than that he had a hand or was taking a part in it. Williams is shown to have been physically a powerful man, and defendant's refusal to go to Rowe's assistance may have been incited by his cowardice and fear of Williams. His bare presence at the time is not sufficient, nor is his failure to give alarm, his silence, inaction, and supposed concealment of the offense. (*Burrell* v. *The State*, 18 Texas, 713; *Tullis* v. *The State*, 41 Texas, 598; *Ring* v. *The State*, 42 Texas, 282; *Truitt* v. *The State*, 8 Texas Ct. App., 148.) We are of opinion the evidence was insufficient to warrant the conviction upon the charge that appellant was a principal offender.

Over objections of defendant, the State was permitted to prove that on the next day after the robbery defendant was seen going into a house with a hatchet in his hand, and that he opened the door and let Williams out, and told the witness " for God's sake not to say anything about it or Williams might go to the peniten-

tiary." Had the defendant been indicted as an accessory, this evidence would have been legitimate to show that he was concealing or endeavoring to conceal the offender and aiding him to evade arrest. (Penal Code, art. 86.) But it did not tend to support the indictment in this case. Under the indictment the defendant could only be found guilty as a principal, and under it he could not be convicted as an accessory, or upon evidence which alone showed him guilty as an accessory. (*Truitt* v. *The State*, 8 Texas Ct. App., 148; *McKean* v. *The State*, 7 Texas Ct. App., 631; *Simms* v. *The State*, 10 Texas Ct. App., 131; *Bean* v. *The State*, 17 Texas Ct. App., 61; 1 Bish. Crim. L. (7th ed.), § 663.)

It was error to admit this evidence in support of the charge as laid in the indictment, without a distinct understanding as to the purposes of its admission, and doubly so when the court failed to instruct the jury with regard to the purposes of its admission. It could only, if at all, have been admitted as a circumstance to be considered, in connection with the other evidence, in determining the existence of a conspiracy and acting together at the time of the robbery, and was not in itself sufficient to establish such conspiracy.

Because the court erred in admitting this evidence, and because the evidence is insufficient to support a verdict and judgment of guilty for the offense stated in the indictment, and for which appellant has been convicted, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 26, 1885.]